UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.D. and T.D., on behalf of C.D.,

                Plaintiffs-Appellants

-against-

New York City Department of Education,
Region 9 (District 2)

                Defendant-Respondent.

07 Civ. 7967 (RMB)

**PLAINTIFFS-APPELLANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR MODIFIED *DE NOVO* REVIEW AND IN OPPOSITION TO DEFENDANT-RESPONDENT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,
Gary S. Mayerson (GSM 8413)
Mayerson & Associates
Attorneys for Plaintiffs-Appellants
330 W. 38th Street, Suite 600
New York, New York 10018
(212) 265-7200
(212) 265-1735 (facsimile)

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

A RULE 56.1 STATEMENT IS NOT REQUIRED ................................................................. 1

ARGUMENT ............................................................................................................................... 2

    A. PRONG I: DEFENDANT-RESPONDENT FAILED TO OFFER C.D. A FAPE FOR 2006-2007 ..... 2

        1. THE NYCDOE FAILED PROCEDURALLY TO OFFER C.D. A FAPE ............................... 2

        2. THE NYCDOE FAILED SUBSTATIVELY TO OFFER C.D. A FAPE ............................... 7

    B. PRONG II: C.D.'S UNILATERAL EDUCATION PROGRAM AND PLACEMENT WERE APPROPRIATE FOR C.D. ........................................................................................ 8

    C. PRONG III: THE EQUITIES FAVOR C.D. AND HIS PARENTS ................................. 9

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

## CASES

Board of Educ. v. Rowley,
   458 U.S. 176 (1982)..................................................................................................7, 8

C.B. v. N.Y. City Dept. of Educ.,
   2005 U.S. Dist. LEXIS 15215 (E.D.N.Y. 2005).........................................................1, 2

Deal v. Hamilton County Board of Educ.,
   392 F.3d 840 (6th Cir. 2004),
   r'hrg and r'hrg en banc denied, 2005 U.S. App. LEXIS 5631 (6th Cir. 2005),
   cert. denied, 546 U.S. 936 (2005)....................................................................................4

Frank G. v. Board of Educ.,
   459 F.3d 356 (2d Cir. 2006),
   cert. denied, 169 L.Ed.2d 325 (2007) ...............................................................3, 6, 8, 9

Gagliardo v. Arlington Central School Dist.,
   489 F.3d 105 (2d Cir. 2006)............................................................................................9

In re Sara P.,
   1988-89 EHLR 401:260 (SEA Wash. 1988) ..................................................................4

J.D. v. Pawlet School Dist.,
   224 F.3d 60 (2d Cir. 2000)..............................................................................................3

M.V. v. Shenendehowa Central School Dist.,
   2008 U.S. Dist. LEXIS 182 (N.D.N.Y. 2008) ................................................................9

Winkelman v. Parma City School Dist..,
   127 S.Ct. 1994 (2007)......................................................................................................5

## STATUTES

20 U.S.C. § 1415(i)(2)(C)......................................................................................................1

## RULES AND REGULATIONS

8 N.Y.C.R.R. § 200.1(r).........................................................................................................6

8 N.Y.C.R.R. § 200.1(eee).....................................................................................................5

8 N.Y.C.R.R. § 200.4(b)(6)(vi)..............................................................................................3

8 N.Y.C.R.R. § 200.4(d)(i) ....................................................................................................5

8 N.Y.C.R.R. § 200.6..............................................................................................................5

(S.D.N.Y. Local Civil) Rule 56.1 ....................................................................................1, 10

INTRODUCTION

This reply memorandum of law, together with plaintiffs-appellants' prior submissions, are respectfully submitted: (a) in further support of plaintiffs-appellants' modified *de novo* appeal from the February 28, 2007 Findings of Fact and Decision of Impartial Hearing Officer ("IHO") Veronica C. Odom, Esq. (Exhibit A annexed to Complaint) and the June 14, 2007 Decision of State Review Officer ("SRO") Paul F. Kelly (Exhibit B annexed to Compliant) (except to the limited extent that the SRO's Decision ordered enforcement of C.D.'s automatic pendency entitlements); and (b) in opposition to defendant-respondent's cross-motion for summary judgment that seeks an affirmance of the underlying administrative determinations.

This memorandum and the earlier submissions also reiterate plaintiffs-appellants' request for declaratory, reimbursement and related relief, relative to C.D.'s educational program and services for the 2006-2007 school year and the Summer of 2007.

A RULE 56.1 STATEMENT IS NOT REQUIRED

In an IDEIA-based action of this type, the statute is clear that this Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Although defendant-respondent has elected to submit a "Defendant's Local Rule 56.1 Statement of Undisputed Facts," ("Rule 56.1 Statement") defendant-respondent has not cited to any authority indicating that such a statement is required for an IDEIA appeal. Simply stated, no such requirement exists. C.B. v. N.Y. City Dept. of Educ., 2005 U.S. Dist. LEXIS 15215 (E.D.N.Y. 2005). Plaintiff-Appellants' motion and defendant-respondent's cross-motion are in the *nature* of summary judgment motions, but they are not really summary judgment motions of the classic variety that

1

parties may make before trial. *See* Defendant-Respondent's Memorandum, p. 5. The instant motions are being made *after* the trial, and after the development of an extensive evidentiary record (supplemented by plaintiffs-appellants' additional evidence).

### ARGUMENT

Like the administrative decisions under review, defendant-respondent's motion for summary judgment fails to address adequately the material procedural and substantive violations of C.D.'s right to receive a free and appropriate public education ("FAPE"), as well as of M.D. and T.D.'s corresponding statutory rights as C.D.'s parents, as detailed in plaintiffs-appellants' principal submissions.

**A.    Prong I: Defendant-Respondent Failed to Offer C.D. a FAPE for 2006-2007**

As plaintiffs-appellants indicated in their principal submissions, and reiterate here, the IHO and the SRO ignored and/or gave insufficient weight to compelling evidence demonstrating the NYCDOE's glaring failures in developing C.D.'s 2006-2007 educational program and placement. Moreover, the NYCDOE's generic 6:1:1 program, with no defined promise of meaningful parent counseling and training, was in no way a match for C.D.'s behaviors, core skill deficits and *individual* educational needs.

**1.  *The NYCDOE Failed, Procedurally, to Offer C.D. a FAPE***

Defendant-respondent noted that the IHO and SRO both "deemed insignificant" the transgressions committed against C.D. and his parents during the development of C.D.'s 2006-2007 educational programming and placement. *See* Defendant-Respondent's Memorandum, p. 6. A series of wrongs are not made right just because two administrative functionaries decided to look the other way. In C.D.'s case, the NYCDOE's procedural violations clearly rose to the

level of a FAPE denial. *See, e.g.,* J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 69 (2d Cir. 2000). We urge the Court to exercise its independent judicial determination to set the record straight.

While defendant-respondent maintains that it is "undisputed" that the IEP Team reviewed C.D.'s "present levels" of performance at the time of the IEP meeting (Defendant-Respondent's Memorandum, p. 8), M.D. testified that the NYCDOE had observed C.D. and relied on its report without further discussion during the April 2006 meeting. (Tr. 280). Notably, the NYCDOE's observation of C.D. took place in *January 2006*, months before the IEP meeting. *See* Exhibit D-8. Moreover, the NYCDOE's Psychoeducational Evaluation, from *December 2005* (which the NYCDOE also points to as a source of information regarding C.D. [*see* Defendant-Respondent's Memorandum of Law, p. 8]), did not paint a full picture of C.D.'s abilities. *See* 8 N.Y.C.R.R. § 200.4(b)(6)(vi). The NYCDOE seemingly did its best *not* to know C.D. – because had they dug a little deeper, they would have seen the truth that was plain as day: C.D. required 1:1 instruction on a full- (and extended-) day basis. As plaintiff-appellant M.D. testified, even some members of the IEP Team admitted as much. (Tr. 281).

Turning to the NYCDOE's proffered Goals and Objectives, it is respectfully submitted that the failure to provide appropriate and *measurable* Goals and Objectives *is* tantamount to a FAPE failure. C.D. required defined program goals to serve as a roadmap for his progress. Without a clear identification of the skills that C.D. was to acquire, how was C.D. to make meaningful progress? More importantly, how was the IEP to be "reasonably calculated" to provide meaningful progress? Frank G. v. Board of Educ. of Hyde Park, 459 F.3d 105 (2d Cir. 2007).

Moreover, without obvious indices of progress, how would anyone know how C.D. was faring with regards to his programming? Finally, what if no one assumed the responsibility of

administering a "Performance Assessment Task" (perhaps because they did not know what constituted a "Performance Assessment Task") (Exhibit P-C, pp. 6-15) – how, then, would anyone know if C.D. was floundering or succeeding? These questions could not be "learn as you go," or C.D. would suffer tremendously. Thus, the NYCDOE's failure to prepare appropriate and measurable Goals and Objectives constituted a FAPE deprivation. *See* In Re Sara P, 1988-89 EHLR 401:260 (SEA Wash. 1988).

The Goals and Objectives were flawed additionally because they did not reflect the input of the entire IEP Team – including C.D.'s parents. Dr. Dewey Aleem (who has attended many, many IEP meetings) did not recall if Goals and Objectives were reviewed at C.D.'s IEP meeting. (Tr. 285). However, M.D., who is a far less frequent participant at IEP meetings (and whose memory on the subject was crystal clear), testified definitely that the IEP Team did not review, or even discuss, the Goals and Objectives. (540, 567).

The exclusion of M.D. and T.D. from the IEP development process extended far beyond the development of the Goals and Objectives, though, and alone amounted to a significant FAPE denial. *See, e.g.*, Deal v. Hamilton County Bd. of Educ., 392 F.3d 840, 857-858 (6th Cir. 2004), *r'hrg and r'hrg en banc denied* (2005), *cert. denied*, 546 U.S. 936 (2005).

In Deal, the sixth circuit made clear that a parent's physical presence and participation at the IEP is not enough. Allowing parents' concerns and recommendations for their children's educational programming to go in one ear and out the other does not count as meaningfully including parents in the IEP development process. Dr. Aleem – who, during cross-examination, showed that he was not fully aware of *what* M.D. and T.D. had been seeking for C.D. – showed that he considered the members of C.D.'s IEP Team to include "[t]he social worker, the parent member, [himself] and [special education teacher Lois] Siegler." (Tr. 582). What about C.D.'s

then teacher, Ms. Hickey? What about M.D.? What about T.D.? Their voices and concerns should have been heard – and counted – equally. Unfortunately, though, they were <u>excluded</u> in terms of how their views were treated and considered. (To this day, the NYCDOE continues to exclude M.D. and T.D. from its consideration of who made up C.D.'s IEP Team in April 2006. *See* Defendant-Respondent's Memorandum, p. 11).

To make matters worse, Dr. Aleem did not even know *what* was available in terms of any DOE programming that was <u>more</u> restrictive and structured than a 6:1:1 class setting. (Tr. 581). How, then, could the IEP Team have possibly considered the full continuum of programming for C.D.? *See* 8 N.Y.C.R.R. § 200.6. One thing the NYCDOE's Team members did believe, though: They could not offer C.D. a 1:1 instructional setting. (Tr. 281). Notably, however, the DOE does find the 1:1 ABA, that is delivered to 15 lucky students who attend the unfortunately, a student must literally "win the lottery" to attend.

Leaving M.D. and T.D. out of the loop of developing C.D.'s educational programming only continued after the IEP meeting. C.D.'s placement *should have been* developed during an IEP Team meeting – with his parents' input. *See* 8 N.Y.C.R.R. § 200.4(d)(i); *see also, e.g.,* <u>Winkelman v. Parma City Sch. Dist.</u>, 127 S.Ct. 1994, 2000 (2007). What actually transpired, though, was that C.D.'s file was sent "to a Placement Officer" to select a school for C.D., and the IEP Team's involvement was over. (Tr. 573).

The Placement Officer is not even someone who attends the IEP meeting the NYCDOE failed to mail its (unilateral) placement recommendation until nearly mid-August. (Tr. 294-295; Exhibit P-J, p. 2). Schools are not open with students all Summer long. *See* 8 N.Y.C.R.R. § 200.1(eee). C.D.'s parents tried to visit the public school (or a comparable site) prior to September 2006, but they were unable to do so (despite their diligent efforts). (Tr. 295-296). As

responsible parents who would need to give "informed consent," how could M.D. and T.D. possibly accept the NYCDOE's recommended program and placement for C.D. sight unseen, and with insufficient information – especially when it represented such a dramatic departure from the full- and extended-day 1:1 instruction that C.D. received during the previous school year)? As responsible parents, the answer is, simply, they could not.

With regards to the appropriateness of C.D.'s Behavior Intervention Plan ("BIP"), once again, Dr. Aleem forged ahead without even consulting C.D.'s parents or providers. The Functional Behavioral Assessment ("FBA") was faulty not only because it was stale, but also because it relied on data taken when C.D. was at the McCarton School, i.e., when he was under the instructional control of skilled 1:1 ABA therapists *and when a Behavior Plan was already in effect*. *See*, *e.g.*, Exhibit D-3. How, then, could Dr. Aleem determine why C.D. engaged in behaviors and how his behaviors related to the environment? *See* 8 N.Y.C.R.R. § 200.1(r). Defendant-respondent makes light of the fact that, as even the SRO agreed, the NYCDOE's proposed BIP was "vague with regard to implementation." Exhibit B annexed to Complaint, p. 17.[1] Yet it was critical for the NYCDOE to get it right and develop a clear, appropriate BIP for C.D. Otherwise stated, in order for professionals to have been able to implement a BIP for C.D. (which was critical to his ability to make educational gains [*see* Exhibit P-C, p. 4]) they had to know what the BIP said. The NYCDOE's stab at developing a BIP for C.D. simply didn't cut the mustard.

---

[1] It makes no difference that the ELIJA School established C.D.'s behavior reduction plan on September 14, 2006 (after baselining C.D.'s behaviors on September 11, 2006). *See* Exhibit P-E. C.D.'s unilateral educational placement is subject to a *relaxed* standard of review than that used to determine whether the local educational agency offered a FAPE. Frank G., 459 F.3d at 364. Moreover, it is hard to even justify a comparison between the ELIJA School's appropriate behavioral interventions and the NYCDOE's vague, insufficient BIP.

## 2. *The NYCDOE Also Failed, Substantively, to Offer C.D. a FAPE*

Another core issue before this Court is the question of whether or not C.D.'s challenged IEP, program and placement were "reasonably calculated" to provide C.D. with a meaningful educational benefit. *See* Board of Educ. v. Rowley, 458 U.S. 176 (1982). It is respectfully submitted that any way you look at it, the NYCDOE's recommended educational program and placement for C.D. for 2006-2007 were insufficient and inappropriate. The NYCDOE's plan for C.D. fails the requisite "reasonably calculated" test.

The IHO and SRO failed to give due weight to the testimony and documentary support from C.D.'s therapists as to the fact that 1:1 instruction was critical for C.D. to be able to make meaningful educational progress. (*See, e.g.,* Tr. 65-66, 230, 329). A 6:1:1 program was not "intensive" enough for C.D., who presented with significant problem behaviors and distractibility issues. (Tr. 65-66, 68, 235). Moreover, C.D. lacked basic "prerequisite skills" that precluded his meaningful interaction with other children. (Tr. 17). The ELIJA School would not have accepted C.D. into its program if C.D. could be educated appropriately in a less restrictive setting than that with a 1:1 student-teacher ratio. (Tr. 230).

In addition to failing to offer appropriate instructional programming for C.D., the NYCDOE failed to address C.D.'s difficulty with using his skills across settings, as well as his need for repetition of instruction beyond the time of the school-day dismissal. In order for C.D. to generalize the skills that he learned in school, he needed significant 1:1 instruction outside of school. (Tr. 62-63, 110, 191, 227-228, 254, 325-326). Also, in order to be able to promote C.D.'s "generalization" of skills (something that children with autism have tremendous difficulties with), M.D. and T.D. required and were statutory entitled to regular and individualized parent counseling and training that would have meant something to <u>their</u> family

7

(as compared with random "workshops" open to a whole school's parent population that may or may not have anything to do with C.D.'s unique issues). (*See* Tr. 423) Moreover, a family should not have to waive and expose family <u>confidentiality</u> in order to participate in parent training and counseling. For 2006-2007, the NYCDOE failed to offer C.D. and his family any of these critical supports.

**B.     Prong II:   C.D.'s Unilateral Educational Program and Placement Were Appropriate for C.D.**

Unlike the NYCDOE's recommended program and placement, C.D.'s unilateral educational programming was entirely appropriate for C.D. and easily met the less stringent Prong II test under <u>Frank G</u>. It is well settled that "[n]o one factor is necessarily dispositive in determining whether parents' unilateral placement is 'reasonably calculated to enable the child to receive educational benefit.'…. [C]ourts assessing the propriety of a unilateral placement consider the totality of the circumstances in determining whether that placement reasonably serves a child's individual needs." <u>Frank G.</u>, 459 F.3d at 364 (*quoting* <u>Rowley</u>, 458 U.S. at 207).

C.D.'s unilateral program and placement were amply appropriate to satisfy Prong II standards. Through C.D.'s program at the ELIJA School, with supplemental 1:1 ABA services outside of school, C.D. was able to make meaningful educational gains. For example, C.D.'s vocal stereotypy had reduced. (Tr. 124-126). C.D. became able to use sentences, instead of single-word requests. (Tr. 109, 116-117). At school C.D. displayed "excellent eye contact" and he greeted adult staff members. (Tr. 119). Plaintiffs-appellants' earlier submissions further detail C.D.'s gains during 2006-2007.

Defendant-respondent attacks C.D.'s unilateral placement because the ELIJA School did not offer C.D. occupational therapy. C.D.'s school program addressed each of the deficits that Dr. Aleem identified as part of an occupational therapist's domain. (Tr. 201-203, 561).

Moreover, defendant-respondent is suggesting an unduly elevated standard for judging C.D.'s unilateral program. *See* Frank G., 459 F.3d at 364[2]; *see also* M.V. v. Shenendehowa Cent. Sch. Dist., 2008 U.S. Dist. LEXIS 182, (N.D.N.Y. 2008) at *10. Defendant-respondent also rings in with a cry of "LRE!" and maintains that the ELIJA School does not represent C.D.'s least restrictive environment.  However, while students are to be educated in the least restrictive environment in which they can progress meaningfully, what is appropriate (and tolerable) for one child may not be appropriate for another child.  As noted, the ELIJA School would not have accepted C.D. as a student if he could be placed in a less restrictive school setting. (Tr. 230).

**C.     Prong III:  The Equities Favor C.D. and His Parents**

As discussed more fully in plaintiffs-appellants' earlier submissions, good parenting and dedicated concern for their child's educational welfare did not render M.D. and T.D. inequitable. Equitable blame should be prompted at the NYCDOE – for failing to include M.D. and T.D. as equal members of C.D.'s IEP Team; for failing to meaningfully consider programming options for C.D.; for failing to offer critical supports that C.D. *required* in order to make *any* educational gains (let alone *meaningful* educational gains); for failing to develop appropriate and measurable Goals and Objectives and a clear BIP (based on an appropriate FBA).  The NYCDOE should look hard in the mirror before it starts blaming two dedicated parents who worked with the NYCDOE but kept an eye open for alternate programming for C.D.  Since the NYCDOE's placement offer came too late in the summer for C.D.'s parents to visit prior to the start of the

---

[2] Frank G. is not inconsistent with Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105 (2d Cir. 2007), cited by defendant-respondent.  In Gagliardo, the student was placed at a school that lacked the very educational/therapeutic setting he required, and was thus found inappropriate for that student. Gagliardo, 489 F.3d at 113-114.  However, Gagliardo in no way disturbs the findings of Frank G. (and even cites to such findings throughout the decision).  The second Circuit, in Frank G., expressly held that a Prong II placement does not have to meet the child's every need.

school year, everyone should be *thanking* M.D. and T.D. for their proactive efforts in following up with the NYCDOE *and* the ELIJA School to ensure that C.D. had an appropriate program and placement for 2006-2007.

Defendant-respondent's Rule 56.1 Statement ignores and/or fails to address adequately the evidentiary record insofar as such record *amply* establishes Prong I in plaintiffs-appellants' favor. Unless directed to do so by this Court, we do not intend to submit a count-by-count response to defendant-respondent's Rule 56.1 Statement. Instead, we request that the Court exercise its independent review power after considering the evidentiary record in its entirety, including the "additional evidence" that plaintiffs-appellants have proffered.

## CONCLUSION

It is respectfully requested that this Court grant plaintiffs-appellants' motion for a modified *de novo* review and reversal of the administrative decisions (except insofar as the SRO's Decision correctly ordered enforcement of C.D.'s pendency entitlements), and deny defendant-respondent's motion for summary judgment and request for affirmance of the administrative decisions. This Court should also award plaintiffs-appellants declaratory, reimbursement and related relief, as well as declare plaintiffs-appellants to be the substantially prevailing party.

Dated: February 8, 2008
      New York, New York

                                                                        
GARY S. MAYERSON (GSM 8413)
Mayerson & Associates
*Attorneys for Plaintiffs-Appellants*
330 West 38th Street, Suite 600
New York, New York 10018
(212) 265-7200
(212) 265-1735 (facsimile

LEXSEE

**M.V., Individually and as Parent and Next Friend of Minor, A.V., a child with a disability, Plaintiff, -v.- SHENENDEHOWA CENTRAL SCHOOL DISTRICT, Defendant.**

**1:06-CV-0571 (LEK/RFT)**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK**

**2008 U.S. Dist. LEXIS 182**

**January 2, 2008, Decided**
**January 2, 2008, Filed**

**COUNSEL:** [*1] For A.V., a child with a disability, individually and by his parent and next friend, M.V., Plaintiff, Counter Defendant: Jason H. Sterne, LEAD ATTORNEY, Office of Andrew K. Cuddy, Williamsville, NY; H. Jeffrey Marcus, Office of H. Jeffrey Marcus, Williamsville, NY.

For Schenendehowa Central School District, Defendant, Counter Claimant: Eileen M. Haynes, LEAD ATTORNEY, Bartlett, Pontiff Law Firm, Glens Falls, NY.

**JUDGES:** Lawrence E. Kahn, U.S. District Judge.

**OPINION BY:** Lawrence E. Kahn

**OPINION**

*MEMORANDUM-DECISION AND ORDER* [1]

> 1   For printed publication by the Federal Reporters.

**I. Background**

M.V. ("Plaintiff" or "Parent"), acting on her own behalf and as representative of her minor child A.V., brings this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), *20 U.S.C. §§ 1400-1485*, Section 504 of the Rehabilitation Act of 1973, *29 U.S.C. § 794*, and Article 89 of the New York State Education Law. *N.Y. Educ. Law §§ 4401-4410-b* (McKinney 2007). Plaintiff is seeking review of an administrative decision of the State Review Officer ("SRO") that declined to award tuition reimbursement for her placement of A.V., a disabled student, in a private school for the 2004-2005 school year. Compl. (Dkt. No. 1) at [*2] PP 1, 40, 41.

Plaintiff also seeks attorneys' fees and expenses pursuant to *20 U.S.C. § 1415(i)(3)*. *Id.* at P 43.

Defendant Shenendehowa School District ("Defendant" or "District") answered and cross claimed, asserting that the SRO had "ignored the facts and misapplied the law when he found that the Hampshire Country School was a proper placement for A.V." Am. Answer with Counterel. (Dkt. No. 5) at PP 2, 34. Defendant also seeks attorneys' fees and costs. *Id.* at P 3.

Presently, Plaintiff moves for summary judgment pursuant to *Rule 56 of the Federal Rules of Civil Procedure*. Notice of Mot. (Dkt. No. 13) at 1.

Defendant opposes and cross motions for summary judgment. Notice of Mot. (Dkt. No. 14) at 1.

**II. Statement of Facts**

**A. Background**

A.V. was born on April 24, 1991. Statement of Material Facts Not in Dispute (hereinafter "Material Facts") (Dkt. No. 14, Attach. 9) at P 1. He first attended District schools in September of 2000 as a student in the regular fourth grade classroom. *Id.* Shortly after beginning the fourth grade, A.V.'s parents referred him to the District's Committee on Special Education ("CSE") because they were concerned that he was experiencing difficulty with basic academics. [*3] *Id.* After evaluating A.V., the CSE determined in February of 2001 that A.V. was a student with a disability. Id. at PP 2-5.

Since the incipient evaluation in 2000, A.V.'s educational needs have been evaluated at numerous points in his school career by various professionals. As a result, A.V. has received several diagnoses, including Pervasive Developmental Disorder. Pl.'s Mem. of Law (Dkt. No.

Case 1:07-cv-07967-RMB    Document 15    Filed 02/08/2008    Page 15 of 17

Page 2
2008 U.S. Dist. LEXIS 182, *

13, Attach. 7) at 1. A.V.'s level of functioning was described in August of 2004 as "requiring constant adult support to help him master basic classroom survival skills and support in the areas of organization, work completion, social interactions and maintaining focus in class." *Id.* at 2.

In the fall of 2003, A.V. began to display escalating inappropriate classroom behaviors in school, several of which were severe enough to warrant out-of-school suspensions. *Id.* at 1. From the period between November 23, 2003, and August 9, 2004, the CSE met at least five times to try to formulate an effective individual educational plan ("IEP") for A.V. The issue of an out-of-district placement was first raised by A.V.'s parents at the November 23, 2003 meeting. Material Facts (Dkt. No. 14, Attach. 9) at PP 15-16. [*4] At that meeting, the District agreed to research appropriate outside placements for A.V. *Id.* at P 16.

During the spring of 2004, District representatives and Plaintiff visited a number of out-of-district special education programs. Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 1. Also, A.V. was evaluated by Dr. Sharma, a neuropsychologist, in May 2004. Material Facts (Dkt. No. 14, Attach. 9) at P 28. Dr. Sharma recommended that A.V. not be placed in an environment for "children with primary externalizing behavior problems or emotional disturbance," as such a placement would be inappropriate and contrary to A.V.'s best interest. Pl.'s Mem. of Law (Dkt. No. 21, Attach. 2) at 6. On that basis, A.V's parents decided that the programs they had visited were inappropriate for A.V. Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 1.

As a result, by June 1, 2004, A.V.'s parents became concerned that no program would be in place by the start of the 2004-2005 school year and wrote a letter to the District expressing their concerns. Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 18. During July and August 2004, parents investigated private residential schools for their son without the District's assistance. [*5] *Id.* at 3. Parents, along with A.V., visited Hampshire Country School, located in New Hampshire, on August 25, 2004, and Hampshire Country School notified them of A.V.'s acceptance the following day. *Id.* A.V.'s parents unilaterally decided to place him at Hampshire Country School on the day he was accepted. Material Facts (Dkt. No. 14, Attach. 9) at P 49. Parents mailed a letter to the District on the same day, notifying it of their decision to privately place A.V. Pl. Mem. of Law (Dkt. No. 13, Attach. 7) at 3.

Meanwhile, in a letter dated August 20, 2004, District notified A.V.'s parents that an intake interview had been scheduled for August 27, 2004 at one of the District's proposed residential placements in Washington, Connecticut. *See* Material Facts (Dkt. No. 14, Attach. 9) at PP 44, 45. The interview was ultimately cancelled because A.V.'s parents did not contact the facility to confirm the appointment. Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 3.

**B. The Administrative Proceedings**

As required by the IDEA in order to obtain tuition reimbursement, A.V.'s parents requested an impartial hearing by letter to the District dated April 11, 2005. *Id.* at 4. The hearing commenced on May [*6] 16, 2005, and continued over eight days. Material Facts (Dkt. No. 14, Attach. 9) at P 57. In a twenty-five page decision dated October 11, 2005, the Impartial Hearing Officer ("IHO") determined that: 1) parents were not entitled to reimbursement for Summit Camp (a private summer program); 2) the District had failed to provide A.V. with a free and appropriate public education; 3) Hampshire Country School was an appropriate placement for A.V.; and 4) the equities favored parental tuition reimbursement for Hampshire Country School, excluding the cost of transportation. *Id.* at PP 58, 59.

The District appealed the decision of the IHO to the State Review Office ("SRO") of the State Education Department. *Id.* at P 60. After a review of the record, the SRO determined that: 1) parent prevailed as to the District's failure to provide a free and appropriate public education ("FAPE"), which had not been contested by the District at this stage of the proceeding; 2) based on the record, Hampshire Country School was an appropriate placement for A.V.; 3) the equities did not favor reimbursement of the parents due to their failure to have A.V. attend "intake evaluation interviews" during the last week [*7] of August 2004; and 4) all of the remaining contentions by both parties were without merit. State Review Officer Appeal No. 05-116 (hereinafter "SRO Decision") (Dkt. No. 13, Attach. 4) at 8, 9, 13.

**III. Discussion**

**A. Standard of Judicial Review**

As a practical matter, "summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions." *Wall by Wall v. Mattituck-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996)*. In an IDEA action, a motion for summary judgment turns on "whether the administrative record, together with any additional evidence, establishes that there has been compliance with the IDEA's processes and that the child's educational needs have been appropriately addressed.'" *Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist., 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003)* (quoting *A.S. ex rel S. v. Norwalk Bd. of Educ., 183 F. Supp. 2d 534, 539 (D. Conn. 2002))*. A

Case 1:07-cv-07967-RMB   Document 15   Filed 02/08/2008   Page 16 of 17

Page 3
2008 U.S. Dist. LEXIS 182, *

summary judgment motion in an IDEA case is, more accurately, "an appeal from an administrative determination, not a summary judgment." *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)).

Administrative [*8] rulings by hearing and review officers are "subject to 'independent' judicial review." *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998) (quoting *Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)). Courts may conduct independent review, but it is not "an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities they review." *Rowley*, 458 U.S. at 206. Administrative proceedings must be given due weight by district courts, because the federal courts do not possess the "specialized knowledge and experience" necessary to determine "persistent and difficult questions of educational policy." *Id.* at 206 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973)). Further, independent judicial review of an IDEA petition is based on a preponderance of the evidence standard. *20 U.S.C. § 1415(i)(2)(C) (2006)*; *M.S. v. Yonkers Bd. of Educ.*, 231 F.3d 96, 102 (2d Cir. 2000). In reviewing a hearing officer's decision, the court must give substantial deference to the educational determinations of the hearing officer and make an independent judgement, based on the preponderance [*9] of the evidence, as to whether that evidence supports the findings and conclusions of the hearing officer. *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380-81 (2d Cir. 2003).

**B. Provision of a Free and Appropriate Public Education**

As a threshold matter in establishing whether tuition reimbursement is warranted, an IEP recommended by the school district must be analyzed to determine whether it fails to provide the student with a free and appropriate public education ("FAPE") as required by the IDEA. *See Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 370, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985); *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 364 (2d Cir. 2006).

The IHO found that the District had failed to provide A.V. with a FAPE. In its appeal to the SRO, the District did not contest this finding. Before this Court, the District admits that it failed to provide a FAPE. After an independent review, it is clear that the record amply supports the findings of the IHO and SRO with respect to the lack of a FAPE provided by the District.

**C. Appropriateness of the Unilateral Placement**

If a student has not been provided with a FAPE as required by the IDEA, determining whether parents are entitled to reimbursement proceeds [*10] to evaluation of the appropriateness of the private placement made by the parents. *See Burlington*, 471 U.S. at 370; *Frank G.*, 459 F.3d at 364. The party initiating the impartial hearing has the burden of persuasion as to the appropriateness of the private placement. *See Schaffer v. Weast*, 546 U.S. 49, 57-59, 126 S. Ct. 528, 163 L. Ed. 2d 387 (2005). In establishing the appropriateness of a unilateral placement, parents need not show that the private placement is ideal in every respect, but they must show that the special needs of the student are met, and that the student is able to benefit from the instruction provided by the placement. *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007).

In the present case, both the IHO and SRO agreed that Hampshire Country School was an appropriate placement for A.V. The Defendant maintains its claim that Hampshire Country School was not an appropriate placement for this student. However, Defendant failed to present to the Court any evidence regarding the appropriateness of the placement that was not already considered by both the IHO and SRO. After conducting an independent review of the record, it is clear that it amply supports the administrative rulings of [*11] both the IHO and SRO with respect to the appropriateness of the parents' unilateral placement.

**D. Tuition Reimbursement**

As the District failed to provide a FAPE for A.V. and Hampshire Country School was an appropriate placement, the sole remaining issue is whether, considering all relevant facts, Plaintiff is entitled to reimbursement. If a student is not provided with a FAPE and the private placement determined by the parents is deemed appropriate, "the district court enjoys broad discretion in considering equitable factors relevant to fashioning relief." *Gagliardo*, 489 F.3d at 112 (citing *Florence Cty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 16, 114 S. Ct. 361, 126 L. Ed. 2d 284 (1993)). Further, the IDEA enables district courts to "grant such relief as the court determines is appropriate." *20 U.S.C. § 1415(i)(2)(C)(iii) (2006)*.

The decisions of the SRO and IHO differ only with respect to the issue of tuition reimbursement. In making a record-based determination that the equities did not favor reimbursement, the SRO rejected the IHO's conclusions about witness credibility without experiencing the testimony of those witnesses. *Wolfe v. Taconic Hills Cent. Sch. Dist.*, 167 F. Supp. 2d 530, 534 (N.D.N.Y. 2001). The major [*12] factor given by the SRO for denying reimbursement was the parents' act of failing to make their child available for intake interviews at two of

the District's recommended placements. SRO Decision (Dkt. No. 13, Attach. 4) at 13. The SRO finds support for his view that it is equitable to deny reimbursement based solely on this factor only in a few SRO decisions, which certainly do not bind this Court. *Id.* at 14-15. The Court finds no decision by a federal court holding that such an extreme result is appropriate here.

Furthermore, in reaching his decision, the SRO incorrectly characterized facts that were apparently central to his analysis:

> the record reflects that respondents knew about the interview dates at these two potential state-approved residential placements because personnel from each facility contacted respondents, directly, to either advise of the interview date or to schedule the interview date.

SRO Decision (Dkt. No. 13, Attach. 4) at 13. In fact, Plaintiff and Defendant agree that only one facility directly scheduled an intake interview with A.V.'s parents. Material Facts (Dkt. No. 14, Attach. 9) at PP 45-46; Pl.'s Mem. of Law (Dkt. No. 13, Attach. 7) at 12-13. The intake [*13] interview with the other facility was scheduled by the District for August 27, and the District notified the parents of this interview by letter dated and mailed on Friday, August 20. *Id.* Although A.V.'s parents spoke via telephone with a representative of that facility, they agreed only to accept information from that facility. *Id.*

After an independent review of the record, the Court finds that the IHO's argument in support of awarding tuition reimbursement to the Plaintiff is more persuasive. In evaluating equitable considerations and the conduct of the parents of A.V., the IHO concluded that: 1) parents cooperated with the CSE by attending CSE meetings and participating fully at those meetings; 2) parents communicated concerns, both at meetings and thereafter, to District in writing; 3) parents appeared "to have been as active as staff in seeking an out-of-district placement for Student"; and, 4) with regard to the intake interviews focused on by the SRO, parents had investigated placements proffered by the District by telephone and internet and "reasonably determined that such were not appropriate, so that no visit was necessary." IHO Decision (Dkt. No. 11) at 21-22. Further, the [*14] IHO determined that parents did not receive correspondence from Defendant advising of the intake visit on August 27, 2004 until after parents had placed A.V. at Hampshire Country School. *Id.* at 22. The IHO concluded by stating that "[a]ll other instances of noncooperation were reviewed by the IHO and were found to be without merit." *Id.*

The Court is more convinced by the credibility determinations and reasoning of the IHO than those of the SRO. Overall, the Court sees Plaintiff as a concerned parent who took great efforts to find an appropriate placement for her son's special needs. Plaintiff's actions were not unreasonable, given her legitimate concerns about the District's ability to make an appropriate placement for A.V. Moreover, it would be inequitable to reward the District for its admitted failure to comply with IDEA.

### IV. Conclusion

Based on the foregoing, the Court finds that Plaintiff is entitled to tuition reimbursement for the 2004-2005 school year. It is hereby

**ORDERED,** that Plaintiff's Motion for Summary Judgment (Dkt. No. 13) is **GRANTED;** and it is further

**ORDERED,** that Defendant's Motion for Summary Judgment (Dkt. No. 14) is **DENIED;** and it is further

**ORDERED,** that the decision [*15] of the State Review Officer is **REVERSED** to the extent that it denied tuition reimbursement; and it is further

**ORDERED,** that Plaintiff is entitled to reimbursement, with interest, from Defendant School District for tuition expenses, excluding transportation, associated with her son A.V.'s placement at Hampshire Country School for the 2004-2005 school year; and it is further

**ORDERED,** that Plaintiff is entitled to reasonable attorneys fees and expenses pursuant to *20 U.S.C. § 1415(i)(3)(B)*; and it is further

**ORDERED,** that Plaintiff shall file with this Court and serve a verified application for tuition reimbursement, attorneys' fees and expenses in accordance with the requirements of *20 U.S.C. § 1415(i)(3)(B)*; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED: January 02, 2008

Albany, New York

/s/ Lawrence E. Kahn

Lawrence E. Kahn

U.S. District Judge