07 Civ. 7967 (RMB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

M.D. and T.D., on behalf of C.D.,

                Plaintiffs,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, Region 9 (District 2),

                Defendant.

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

# MICHAEL A. CARDOZO

*Corporation Counsel of the City of New York*
Attorney for Defendant
100 Church Street
New York, NY  10007

Of Counsel:  Toni Gantz
Tel:  (212) 788-0908

**PRELIMINARY STATEMENT**

Defendant New York City Department of Education ("DOE") submits this memorandum of law in further support of its cross-motion for summary judgment. Plaintiffs appeal the New York State Department of Education Office of State Review's administrative decision affirming an Impartial Hearing Officer's finding that defendant New York City Department of Education ("DOE") offered plaintiffs' child ("the Student") a free appropriate public education for the 2006-2007 school year, and accordingly denying plaintiffs reimbursement for costs stemming from their unilateral placement of the Student at a private school that year. Plaintiffs bring their action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C.§ 1400 *et seq*.

In their memorandum of law dated February 8, 2008 and submitted in opposition to defendant's cross-motion ("Pls.' Reply"), plaintiffs merely reiterate the arguments they raised in their prior motion papers (and during the underlying administrative proceedings) in claiming that defendant did not offer the Student a free appropriate public education; that the unilateral placement plaintiffs chose was appropriate; and that equitable considerations favor plaintiffs. Plaintiffs' arguments should be rejected. Because the Individualized Education Program proposed for the Student conformed to the procedural requirements of the IDEA and was reasonably calculated to confer educational benefit, and because plaintiffs consequently cannot meet their burden of demonstrating otherwise, plaintiffs cannot prevail on their claims.

Moreover, although the Court need not reach the questions of whether plaintiffs' unilaterally chosen placement is appropriate or whether the equities favor plaintiffs, plaintiffs' arguments on these grounds also fail, as discussed below. Accordingly, this Court should grant defendant's cross-motion, deny plaintiffs' motion for "modified *de novo* review," and dismiss plaintiffs' complaint in its entirety.

## ARGUMENT

## POINT I

### A RULE 56.1 STATEMENT IS APPROPRIATE

As several courts in this Circuit have acknowledged, "IDEA actions in federal court generally are resolved by examination of the administrative record in a summary judgment procedural posture." Viola v. Arlington Cent. Sch. Dist., 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006); see J.R. v. Bd. of Educ., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004); Antonaccio v. Bd. of Educ., 281 F. Supp. 2d 710, 714 (S.D.N.Y. 2003) ("Courts have found that 'summary judgment appears to be the most pragmatic procedural mechanism in the Federal Rules for resolving IDEA actions.'" (quoting A.S. v. Norwalk Bd. of Educ., 183 F. Supp. 2d 534, 539 (D. Conn. 2002) and Wall v. Mattitick-Cutchogue Sch. Dist., 945 F. Supp. 501, 508 (E.D.N.Y. 1996))). Under the Southern District's Local Civil Rule 56.1, any party making a motion for summary judgment must include a statement of undisputed facts. See S.D.N.Y. Local Civ. R. 56.1(a). In addition, a party opposing such a motion must include a statement responding to the moving party's statement. See S.D.N.Y. Local Civ. R. 56.1(b). Moreover, facts set forth in the moving party's statement "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." S.D.N.Y. Local Civ. R. 56.1(c).

Plaintiffs assert that defendant's Rule 56.1 statement of undisputed facts was not required in this action.[1] Plaintiffs' assertion is without basis. As discussed above, IDEA actions such as

---

[1] In support of their assertion, plaintiffs cite to C.B. v. N.Y. City Dep't of Educ., 02 Civ. 4620, 2005 U.S. Dist. LEXIS 15215 (E.D.N.Y. June 10, 2005). In that decision, the court held only that plaintiffs' failure to submit a Rule 56.1 Statement did not warrant dismissal of their motion for "modified *de novo* review." Id. at *40-44. Indeed, the C.B. court relied extensively on defendant's uncontroverted Rule 56.1 statement. See id. at *3-6.

plaintiffs' proceed by way of summary judgment in this Circuit, see, e.g., Viola, 414 F. Supp. 2d at 377, and this Court's Local Civil Rules require statements of undisputed fact to be submitted with summary judgment motions, see S.D.N.Y. Local Civ. R. 56.1(a). Accordingly, defendant's Rule 56.1 statement, submitted with defendant's cross-motion for summary judgment, was plainly required. In addition, as plaintiffs have not submitted a statement controverting the facts set forth in defendant's Rule 56.1 statement, those facts must be deemed admitted for the purposes of this motion. See S.D.N.Y. Local Civ. R. 56.1(c).

## POINT II

### DEFENDANT OFFERED THE STUDENT A FREE APPROPRIATE PUBLIC EDUCATION FOR THE 2006-2007 SCHOOL YEAR

**A.   Defendant Complied with the Procedural Requirements Set Forth in the IDEA**

In opposing defendant's cross-motion, plaintiffs simply repeat the arguments already made in their initial motion papers in attempting to assert that the Student was denied a free appropriate public education ("FAPE") on procedural grounds. Defendant thus respectfully refers the Court to Point I(A) of defendant's memorandum of law dated January 22, 2008 for defendant's response to these arguments.

In addition, it is worth emphasizing that the Student's Individualized Education Program ("IEP") was fully informed by a myriad of current and prior data about the Student, including a psychological evaluation,[2] a Functional Behavioral Assessment, a social history, a Behavior Reduction Plan from the McCarton School ("McCarton"), a speech and language progress report

---

[2] Although plaintiffs now argue that this evaluation, which was made in December 2005, did not reflect the Student's "present levels" because it was made four months prior to the April 7, 2006 Committee on Special Education ("CSE") meeting (see Pls.' Reply 3), nothing in the record indicates that the Student's behavior or performance had changed in that interim (see Compl. Ex. B at 16).

3

from McCarton, an occupational therapy progress report from McCarton, an updated classroom observation of the Student, and tables and charts tracking the Student's problem behaviors. (See Def.'s 56.1 Statement ¶ 13.) This information was reviewed and discussed by the participants of the CSE meeting, who included plaintiffs, a social worker, a DOE special education teacher, a DOE school psychologist, a parent member, and an assistant director from McCarton. (See id. at ¶¶ 12, 13.) In asserting that this information "did not paint a full picture of [the Student's] abilities" (Pls.' Reply 3) and that the IEP did not reflect the input of all of the CSE meeting participants, plaintiffs are in effect arguing that the IEP did not reflect plaintiffs' desire for a full-time 1:1 instructional program for the Student. Such arguments are belied, however, by defendant's ultimate program recommendation for the Student, which included a significant amount of 1:1 instruction and support, including a full-time 1:1 crisis management paraprofessional assigned only to the Student, seven thirty-minute 1:1 occupational therapy sessions per week, seven thirty-minute 1:1 speech/language therapy sessions per week, and placement in a class in which the Student would have received some amount of 1:1 instruction every day. (See Def.'s 56.1 Statement ¶ 16; Tr. 395, 480.)

Defendant also makes a final observation as to plaintiffs' procedural arguments. In referring to Dr. Aleem's testimony regarding the private schools to which a student may be referred by the DOE's Central Based Support Team ("CBST") and arguing that Dr. Aleem "did not even know *what* was available" (Pls.' Reply 5), plaintiffs conflate a *program recommendation* with a *specific school designation*, and thereby misunderstand the IEP process. The program recommendation that is indicated on a student's IEP describes the "general type of educational program" recommended for the child. Concerned Parents & Citizens v. N.Y. City Bd. of Educ., 629 F.2d 751, 753 (2d Cir. 1980). Once a program recommendation has been

4

made, a specific school is designated, indicating the actual school at which a student will receive the recommended educational program. (See, e.g., Pls.' Ex. J.)  The IEP that was developed through the CSE meeting here recommended a 6:1:1 program for the Student.  (See Pls.' Ex. C.)  Had a 1:1 program been recommended, the Student's case would have been referred to the Central Based Support Team ("CBST"), which finds placements for students in private schools.  (See Tr. 544, 557-58, 577-78.)  Thus, although Dr. Aleem stated that he did not know "in detail" about the private schools to which students are referred by the CBST (Tr. 581), this does not demonstrate that a 1:1 program could not have been recommended if appropriate, or that the CSE would not have been able to refer the Student to a private school that could provide 1:1 instruction.  (See Tr. 544, 557-58, 577-78.)  See also Bettinger v. N.Y. City Bd. of Educ., 06 Civ. 6889, 2007 U.S. Dist. LEXIS 86116, at *6-8 (S.D.N.Y. Nov. 20, 2007) (discussing the process by which a student's CSE team referred that student's case to the CBST for private school placement).  As discussed more fully in defendant's prior motion papers, the 6:1:1 recommended program was appropriate for the Student's needs, and thus what may have been available via a private school placement is simply irrelevant.

In short, because plaintiffs' opportunity to participate in the IEP process was not significantly impeded and because the asserted procedural flaws did not cause a deprivation of educational opportunity, the procedural violations plaintiffs allege do not amount to the denial of a FAPE.  See 20 U.S.C. § 1415(f)(3)(E)(ii); W.S. v. Rye City Sch. Dist., 454 F. Supp. 2d 134, 138 (S.D.N.Y. 2006).

**B.**     **The Student's IEP Was Reasonably Calculated to Confer Educational Benefit**

Defendant respectfully refers the Court to Point I(B) of defendant's prior memorandum of law for defendant's response to plaintiffs' restated arguments on the substantive adequacy of the IEP.  Defendant also notes that in re-arguing their position on what plaintiffs believe is

5

educationally appropriate for the Student—a position that has been rejected at both stages of administrative review preceding the present action—plaintiffs again ask this Court to engage in the type of educational policy determination that is barred by Rowley and its progeny. See, e.g., Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 195 (2d Cir. 2005).

For the reasons set forth in detail in defendant's prior motion papers and as found by both the Impartial Hearing Officer and the State Review Officer after their careful and thorough review of the evidence, the IEP prepared for the Student was reasonably calculated to confer educational benefit, and the Student was thus offered a FAPE for the 2006-2007 school year. See Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982). Accordingly, defendant is entitled to judgment as a matter of law and its cross-motion should be granted.

## POINT III

### PLAINTIFFS' UNILATERAL PRIVATE PLACEMENT WAS INAPPROPRIATE FOR THE STUDENT

Defendant respectfully refers the Court to Point II of its prior memorandum of law for defendant's response to plaintiff's restated arguments on the appropriateness of the unilateral placement.

Plaintiffs also argue that the least restrictive setting for the Student was that of the ELIJA School, a five-student school at which each student receives full-time 1:1 instruction and has no interaction with other students or the community at large. (Def.'s 56.1 Statement ¶ 18; Tr. 169-70, 206.) Plaintiffs' basis for this argument is that the "ELIJA School would not have accepted [the Student] if he could be placed in a less restrictive school setting." (Pls.' Reply 9.) This contention is without merit. A school's decision to accept a student is significantly different than the determination that a court or administrative review officer makes as to least restrictive setting, which involves the consideration of specific factors prescribed by State regulation. See 8

6

N.Y.C.R.R. § 200.1(cc). As discussed in defendant's prior memorandum, the record evidence indicates that a setting like that provided by the ELIJA School would not be the least restrictive environment for the Student, and the ELIJA School's admission process is irrelevant to the least-restrictive-setting analysis.

## POINT IV

### THE EQUITIES FAVOR DEFENDANT

Defendant respectfully refers the Court to Point III of defendant's prior memorandum of law for defendant's response to plaintiffs' restated arguments regarding the equities in this case.

Plaintiffs also now suggest that their "good parenting and dedicated concern" for their child should lead to a finding that the equities favor plaintiffs. (Pls.' Reply 9.) Defendant does not suggest that plaintiffs are not loving and dedicated parents, but this is not a determining factor in a consideration of the equities. Rather, in determining whether equitable considerations weigh in favor of parents in an IDEA action, courts generally examine the parents' level of cooperation with school officials in finding an appropriate educational placement for their child. See, e.g., M.C. v. Voluntown Bd. of Educ., 226 F.3d 60, 68-69 (2d Cir. 2000) (citing cases). Here, undisputed evidence shows that plaintiffs informed defendant shortly after the CSE meeting that they intended to reject defendant's program recommendation, enroll the Student in the ELIJA School, and retroactively seek tuition reimbursement. (Def.'s 56.1 Statement ¶ 21.) Although plaintiffs' actions may have been motivated by concern for their child, such actions do not demonstrate cooperation, are not what the IDEA scheme contemplates, and preclude any grant of relief. See, e.g., 20 U.S.C. § 1412(a)(10)(C)(iii)(III); Tucker, 873 F.2d at 567; Antkowiak v. Ambach, 838 F.2d 635, 642 (2d Cir. 1988).

**CONCLUSION**

Based on the foregoing, defendant New York City Department of Education respectfully requests that plaintiffs' motion for "modified *de novo* review" be denied, that defendant's cross-motion for summary judgment be granted, that the Complaint be dismissed in its entirety, and that the Court grant defendant such other and further relief as the Court deems just and proper.

Dated:  February 28, 2008
          New York, New York

>                    MICHAEL A. CARDOZO
>                    Corporation Counsel of the City of New York
>                    Attorney for Defendants
>                    100 Church Street, Room 2-301
>                    New York, N.Y. 10007
>                    (212) 788-0908
>                    Fax: (212) 788-0940
>                    tgantz@law.nyc.gov
>
>                    By:_____s/_____
>                         Toni Gantz (TG1198)
>                         Assistant Corporation Counsel