```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/27/08
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
M.D. and T.D., on behalf of C.D.,                :
                                                 :
                        Plaintiffs,              :   07 Civ. 7967 (RMB)
                                                 :
            v.                                   :   <u>ORDER</u>
                                                 :
NEW YORK CITY DEPARTMENT OF                      :
EDUCATION,                                       :
                                                 :
                        Defendant.               :
------------------------------------------------------------X

**I.     Background**

On or about September 11, 2007, M.D. and T.D. ("Plaintiffs" or "Parents") commenced this action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., on behalf of their son, C.D. ("C.D." or "Child"), against the New York City Department of Education ("Defendant" or "Department"). (See Compl. at 1–2.) Plaintiffs seek, among other things, $90,000 in tuition reimbursement for enrolling C.D., who has autistic spectrum disorder, in the (private) ELIJA School, located in Levittown, New York, for the 2006–07 school year. (See Compl. at 2–3; Pls. Ex. O at 1.)

The parties agree that: (i) in 2003, the Department's Committee on Preschool Special Education diagnosed four-year-old C.D. with autistic spectrum disorder and placed him in the McCarton School, located in New York, New York, where he received "one-to-one instruction" for approximately 3 years (Def. Ex. 7 at 1; IHO Tr. at 272; Pls. Ex. A at 2; Def.'s Local Rule 56.1 Statement of Undisputed Facts, dated Jan. 22, 2008 ("Def. 56.1"), ¶ 4); (ii) on or about April 7, 2006, the Department's Committee on Special Education ("CSE") convened for the purpose of developing an individualized education program ("IEP") for C.D. for the 2006–07 school year (Def. Ex. 13 at 1; IHO Tr. at 278, 568–69); (iii) at the April 7, 2006 IEP meeting,

Plaintiffs requested that C.D. "remain in a one-to-one environment," but the CSE concluded that C.D. should be placed in a "[s]pecial class in a specialized school with a [teacher to student to paraprofessional ratio] of 6:1:1" (IHO Tr. at 280, 532; Def. Ex. 11 at 1); (iv) Plaintiffs sent Defendant a letter, dated April 17, 2006, stating that "we hereby notify you that we disagree with [the 6:1:1] recommendation and plan to place [C.D.] in the ELIJA School in Levittown, New York beginning in Fall 2006 and will seek to hold the New York City Department of Education responsible for reimbursement of tuition" (Def. Ex. 14 at 1); and (v) on or about September 8, 2006, Plaintiffs filed a "Demand for Due Process and Stay Put Pendency," arguing that Defendant "should reimburse [Plaintiffs] for the tuition at the ELIJA School" (Pl. Ex. A at 1, 3).

A New York State Impartial Hearing Officer ("State Hearing Officer") reviewed, pursuant to the IDEA, Plaintiffs' request for tuition reimbursement and determined that Defendant "provided [C.D.] with a free appropriate public education ['FAPE']" and denied reimbursement. See Findings of Fact & Decision, No. 106508, dated Feb. 28, 2007. A New York State Review Officer ("State Review Officer") affirmed the State Hearing Officer decision, holding that Plaintiffs "have not met their burden of persuasion that [C.D.] required full-time 1:1 instruction" and Defendant's "proposed placement appeared to be well matched to [C.D.'s] academic, expressive, language, behavioral, and related service needs." See Application of a Child with a Disability, Appeal No. 07-030, dated June 14, 2007.

On or about December 21, 2007, Plaintiffs moved in this Court for summary judgment, arguing, among other things, that (1) Defendant "failed procedurally . . . to offer C.D. a FAPE for 2006–07"; (2) Defendant "failed to offer C.D. . . . sufficient educational programming, leading to a [substantive] FAPE denial"; (3) "C.D.'s 2006–07 unilateral program and placement . . . [at] the ELIJA School . . . [was] appropriate"; and (4) "the equities favor

reimbursement of [Plaintiffs'] costs and expenses . . . for the 2006-07 school year." (Pl. Mem. of Law, dated Dec. 21, 2007 ("Pl. Mem."), at 6, 13, 20, 21, 27.)

On or about January 22, 2008, Defendant opposed Plaintiffs' motion and cross-moved for summary judgment, countering that (1) "Defendant complied with the procedural requirements set forth in the IDEA"; (2) Defendant "offered [C.D.] a FAPE for the 2006–07 school year"; (3) "Plaintiffs' unilateral private placement was inappropriate for [C.D.]"; and (4) "the equitable factors . . . require[] a finding in favor of [Defendant]." (Def. Mem. of Law, dated Jan. 22, 2008 ("Def. Mem."), at 6, 21, 24.) On or about February 8, 2008, Plaintiffs filed a reply brief ("Reply"). On or about February 28, 2008, Defendant filed a sur-reply brief ("Sur-reply"). The parties waived oral argument.

**For the reasons set forth below, Plaintiffs' motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.**

## II.     Legal Standard

"A parent dissatisfied with a state review officer's decision to deny tuition reimbursement may bring a civil action in federal district court." Bettinger v. New York City Bd. of Educ., No. 06 Civ. 6889, 2007 WL 4208560, at *4 (S.D.N.Y. Nov. 20, 2007); see also 20 U.S.C. § 1415(i)(2)(A). "IDEA actions in federal court generally are resolved by . . . summary judgment." J.R. v. Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004).

"While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lack[s] the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206, 208 (1982)).

### III. Analysis

**(1) Procedural Compliance**

Plaintiffs argue that Defendant "failed procedurally . . . to offer C.D. a FAPE for 2006–07" because, among other reasons, "[a]t the IEP meeting, [Defendant] failed to review C.D.'s present levels" of performance; the IEP fails "to include sufficiently specific and measurable goals and objectives"; and Defendant gave "short shrift to [Plaintiffs'] concerns and exclud[ed] them from meaningful participation in the IEP meeting." (Pl. Mem. at 6–9, 11–12.)

Defendant counters, among other things, that C.D.'s "present levels of performance were before the group at the [IEP] meeting—including progress reports from the McCarton School, a psychological evaluation, . . . tables and charts tracking [C.D.'s] problem behaviors, and a social history"; "short-term objectives clarified the goals and provided the requisite specificity"; and Plaintiffs "voiced [their] request at the [IEP] meeting, and [Defendant] was familiar with [Plaintiffs'] concerns." (Def. Mem. at 8–14.)

Plaintiffs were afforded adequate process and offered a FAPE and Defendant complied with statutory procedures. Plaintiffs do not show that the IEP meeting "result[ed] in the loss of educational opportunity or seriously infringe[d] on [their] participation in the creation or formulation of the IEP." See W.S. ex. rel. C.S., 454 F. Supp. 2d, 134, 138 (S.D.N.Y. 2006); see also 20 U.S.C. § 1415(f)(3)(E)(ii). The State Review Officer properly found that "the record reflects that [Plaintiffs] actively participated during the [IEP] meeting"; they "were afforded an opportunity to raise questions or concerns regarding the proposed present levels of performance"; "the record does not show that [C.D.'s mother] was precluded from discussing [annual goals] at the meeting"; C.D.'s mother "testified that she requested that [C.D.] remain in a 1:1 instructional environment"; Defendant "indicated [to Plaintiffs] why it would not make that

recommendation"; Plaintiffs "were provided with a copy of the IEP to review and the opportunity to respond to it"; and Defendant "determined [C.D.'s] program recommendation after consideration of the evaluative information provided to it, parental concerns, and statements made by the McCarton School's assistant director regarding [C.D.'s] behavior." (Compl. Ex. B at 10–16.) As required by IDEA and state law, the IEP considered current evaluative data and contains "approximately 14 annual goals and 69 short-term objectives"; the goals "specifically correlate to the needs identified during the evaluation and in [C.D.'s] progress reports"; and the goals are tailored to "provide [C.D.] with support so that he can make the appropriate gains and progress." (Compl. Ex. B at 11); see also Perricelli v. Carmel Cent. School Dist., No. 06 Civ.2114, 2007 WL 465211, at *10–11 (S.D.N.Y. Feb. 9, 2007).

(2)     Free Appropriate Public Education (FAPE)

Plaintiffs argue, among other things, that Defendant "failed to offer [Plaintiffs] any individualized parent counseling and training based on C.D.'s autism"; Defendant's "proposed IEP purported to place C.D. in a 6:1:1 class . . . which was wholly inappropriate for C.D"; "C.D. required 1:1 instruction consistently throughout the day"; "[t]he proposed IEP . . . failed to offer C.D. any home-based therapy services"; and Defendant failed "to place C.D. in a program with students who presented similar educational needs." (Pl. Mem. at 13–15, 18.)

Defendant counters, among other things, that "the record makes clear that appropriate parent counseling and training was available to Plaintiffs . . . even if it was not referred to on the IEP"; "[t]he record demonstrates that [C.D.] would have received an appropriate amount of 1:1 support and instruction throughout the day in the proposed class"; "the record . . . does not contain evaluative data to support [Plaintiffs'] contention that [C.D.] requires home-based 1:1

instruction in order to receive a FAPE"; and C.D. "would have been appropriately grouped in the proposed class." (Def. Mem. at 18–20.)

Plaintiffs fail to show that the FAPE was improper or that "the services offered by [Defendant] were inadequate." See W.S., 454 F.Supp.2d at 138. "What the [IDEA] guarantees is an appropriate education, not one that provides everything that might be thought desirable by loving parents." Walczak, 142 F.3d at 132 (citation omitted). In keeping with the "IDEA's preference . . . for disabled children to be educated in the least restrictive environment," see id., the proposed placement appears to have been appropriate with "educational instruction specially designed to meet [C.D.'s] unique needs," see Rowley, 458 U.S. at 188 (1982). Because the "IEP complied with the requirements of IDEA, [Defendant] cannot be ordered to reimburse the Parents for expenses incurred as a result of their decision to remove their Child from [Defendant's] program." See Walczak, 142 F.3d at 134.

**(3)    Plaintiffs' Unilateral Placement**

Plaintiffs argue, among other things, the "ELIJA School program focused on developing independence"; "C.D.'s program was individualized continuously based on C.D.'s needs and data results"; C.D. "made significant gains through his programming"; "the ELIJA School stayed in close contact with C.D.'s parents"; C.D.'s "expressive language skills and academic skills expanded"; and "the ELIJA School would not have accepted C.D. as a student if he could be placed in a less restrictive school setting." (Pl. Mem. at 21–27; Reply at 9.)

Defendant counters, among other things, that "the ELIJA School is not the least restrictive environment for [C.D.]"; "the school had a total of five students, all of whom were autistic"; there is no "opportunity to interact with the other students in his school"; and the

6

evidence shows that C.D. "is a social child and enjoys interacting with other children." (Def. Mem. at 21–23.)

C.D.'s experience at the ELIJA School "does not itself demonstrate that [the] private placement was appropriate." See Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 115 (2d Cir. 2007). "IDEA's preference is for disabled children to be educated in the least restrictive environment capable of meeting their needs." Walczak v. Florida Union Free School Dist., 142 F.3d 119, 132 (2d Cir. 1998). "Even in cases in which mainstreaming is not a feasible alternative, the statutory preference for a least restrictive placement applies." Id. (internal quotation omitted). Plaintiffs do not offer evidence that the ELIJA School was the least restrictive environment for C.D. other than by asserting (in conclusory fashion) that "the ELIJA School would not have accepted C.D. as a student if he could be placed in a less restrictive school setting." (Pl. Mem. at 9.) The determination of whether a placement provides the "least restrictive setting" for a student depends on "specific factors prescribed by state regulation." See 8 N.Y.C.R.R. § 200.1 (cc).[1] Plaintiffs do not meet "the[ir] burden of demonstrating that the private placement [was] appropriate." See Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir. 2006).

(4) **Equitable Factors**

Plaintiffs argue that they "had not received a placement recommendation for C.D. by late July 2006"; Defendant "effectively made it impossible for [Plaintiffs] to accept the [proposed] placement, leaving them without a spot for C.D. come September 2006"; Defendant failed "to include [Plaintiffs] as equal members of C.D.'s IEP team"; Defendant failed "to meaningfully

---

[1] These factors include placing the student in an environment that will: "provide the special education needed by the student"; "provide for education of the student to the maximum extent appropriate to the needs of the student with other students who do not have disabilities"; and "be as close as possible to the student's home." 8 N.Y.C.R.R. § 200.1 (cc)

consider programming options for C.D."; and Plaintiffs merely "kept an eye open for alternate programming for C.D." (Pl. Mem. at 27; Reply at 9.)

Defendant argues that "Plaintiffs never intended to consider the public school placement offered by Defendant" and that C.D.'s mother "testified [that] she never intended to look at any program that was not solely 1:1 instruction or that was not based primarily in 'Applied Behavior Analysis,' a particular method of educating autistic children"; "it is undisputed that Plaintiffs looked at and applied only to the ELIJA School"; and "Plaintiffs unequivocally told Defendant as early as April 2006 that they intended to enroll [C.D.] at the ELIJA School and seek tuition reimbursement." (Def. Mem. at 24–27.)

Plaintiffs "have not sustained their burden of proving that equitable considerations favor their claim." Carmel Cent. Sch. Dist. v. V.P., 373 F. Supp. 2d 402, 417 (S.D.N.Y. 2005). On or about April 17, 2006, approximately ten days after the IEP meeting, Plaintiffs sent Defendant a letter stating that they "plan to place [C.D.] in the ELIJA School . . . and will seek to hold [Defendant] responsible for reimbursement of tuition." (Def. Ex. 14 at 1.) In choosing unilaterally to enroll C.D. in the ELIJA School, Plaintiffs failed to fulfill "their obligation to work together with school officials to find a placement that was appropriate." See Tucker v. Bay Shore Sch. Dist., 873 F.2d 563, 567 (2d Cir. 1989); see also Carmel Central School Dist. v. V.P. ex rel. G.P., 373 F. Supp. 2d 402, 417–18 (S.D.N.Y. 2005).

## IV. Conclusion

For the reasons set forth above, Plaintiffs' motion for summary judgment [#9] is denied and Defendant's cross-motion for summary judgment [#12] is granted. The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
      June 27, 2008

_____
**RICHARD M. BERMAN, U.S.D.J.**